UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ANA B. MOLINA GONZALEZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | EP-24-CV-00430-ATB |
| | § | |
| FRANK BISIGNANO, *Commissioner of* | § | |
| *Social Security Administration*, | § | |
| | § | |
| *Defendant*. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA).  Pursuant to 42 U.S.C. § 405(g), Plaintiff Ana B. Molina Gonzalez, the claimant at the administrative level, appeals from the final decision of Defendant Frank Bisignano, the SSA's Commissioner, denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  Pursuant to 28 U.S.C. § 636(c), the parties have consented to disposition by the undersigned Magistrate Judge.  For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I.   BACKGROUND

On December 26, 2019, Gonzalez, then 61 years old, was diagnosed with multiple myeloma;[1] Dr. Maria Aloba of Texas Oncology, a cancer treatment center in Gonzalez's hometown, El Paso, Texas, made the diagnosis.[2]  In February 2020, Gonzalez sought treatments

---

[1] Multiple myeloma is a cancer of plasma cells.  *See* American Cancer Society, https://www.cancer.org/cancer/types/multiple-myeloma/about/what-is-multiple-myeloma.html (last visited Nov. 21, 2025); *see also* Tr. of Admin. R. [hereinafter Tr.] at 305 ("The patient has a history of plasma cell myeloma." (notation on a bone marrow report, dated September 4, 2020, from MD Anderson Cancer Center)); *id.* at 227 (Gonzalez explaining that multiple myeloma is a bone marrow cancer).

[2] *See* Tr. at 1444, 2940, 2942.

at MD Anderson Cancer Center in Houston, Texas.[3]  Dr. Hans Lee and Dr. Samer Srour of MD Anderson recommended, as an initial phase treatment, induction therapy, which is a "frontline" regimen with three drugs, including Revlimid (a.k.a. Lenalidomide); she received that therapy from April to August 2020.[4]  On September 23, 2020, she underwent an autologous stem cell transplant at MD Anderson.[5]  Lab studies conducted three months later in December 2020 showed that the transplant was successful and her Myeloma cancer went into complete remission.[6]  Since January 2021, Gonzalez has been on a maintenance regimen with Revlimid.[7]  Her cancer continued to remain in complete remission throughout the relevant period.[8]

On February 17, 2022, Gonzalez applied for disability insurance benefits, alleging that she became disabled as of December 30, 2021, due to multiple myeloma and its associated symptoms.[9]  She was 63 years old when she applied for benefits.[10]  She has two years of college

---

[3] Tr. at 930–34, 983–84, 991.

[4] *Id.* at 1085–86.

[5] *Id.* at 581.

[6] *See id.* at 1779 ("Myeloma studies at 3 months after transplant showed deeper response with sCR [i.e., stringent complete response]." (MD Anderson treatment notes dated Mar. 29, 2021)); *id.* at 2752 (Gonzalez "had a stem cell transplant for multiple myeloma and is in FULL REMISSION. RESOLVED." (Texas Oncology treatment notes dated April 23, 2021)); *id.* at 2899–2900 ("She reports that in December 2020 she was told [by] MD Anderson that she was cancer free." (treatment notes dated June 30, 2021, from El Paso Cardiology Associates PA)).

[7] *E.g.*, *id.* at 1837.

[8] *E.g.*, *id.* at 1786 (Multiple Myeloma "[r]emains in CR." (treatment notes dated Mar. 30, 2021)); *id.* at 1843 (same (June 22, 2021)); *id.* at 1901 (same (Sept. 28, 2021)); *id.* at 2136 (same (Mar. 29, 2022)); *id.* at 2186 (same (Sept. 20, 2022)); *id.* at 2241 (same (Mar. 7, 2023)); *id.* at 2814 ("Multiple myeloma in remission." (June 19, 2023)).

[9] *Id.* at 24, 203; *see also id.* at 233–34 (alleging additional symptoms after the initial stage of the administrative proceedings).

[10] *Id.* at 186.

education.[11]  In the past, she worked as a load research analyst at an electric utility company; at that position, which she held for 15 years, she studied and generated reports of customers' electricity usage behavior, using statistical modeling.[12]  She last worked on December 30, 2021.[13]

       Gonzalez's application was denied initially on April 28, 2022, and on reconsideration on December 20, 2022.[14]  Thereafter, Gonzalez requested a hearing before an Administrative Law Judge (ALJ).[15]  On June 28, 2023, ALJ Jim Fraiser held a hearing, where Gonzalez and a vocational expert (VE) testified; at the hearing, Gonzalez was represented by her administrative counsel.[16]  On November 1, 2023, ALJ Fraiser issued a written decision, wherein he found that Gonzalez was not disabled within the meaning of the Social Security Act and denied Gonzalez's claim.[17]  Gonzalez appealed to the Social Security Appeals Council for review of the ALJ's decision.  On April 5, 2024, the Appeals Council denied her request for review, finding that no basis existed for changing the ALJ's decision.[18]  The ALJ's decision thereby became the "final decision" of the Commissioner.[19]

---

[11] Tr. at 203–04.

[12] *Id.* at 39, 196–99, 204, 212.

[13] *Id.* at 39, 204.

[14] *Id.* at 24.

[15] *Id.* at 86.

[16] *Id.* at 24.

[17] *Id.* at 30.

[18] *Id.* at 11.

[19] *See* 42 U.S.C. § 405(g) (providing that a claimant may obtain judicial review of any "final decision" of the Commissioner of Social Security); *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th

On December 2, 2024, Gonzalez brought this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  On June 20, 2025, Gonzalez filed her opening brief requesting that the Commissioner's decision be reversed and her claim for disability benefits be remanded for further administrative proceedings.  Pl.'s Opening Br. at 16 [hereinafter Pl.'s Br.], ECF No. 15.  On September 10, 2025, the Commissioner filed a response brief in support of his decision, Br. in Supp. of Comm'r's Decision [hereinafter Def.'s Resp.], ECF No. 21, and Gonzalez followed by filing a reply brief on September 24, 2025, Pl.'s Reply Br. in Supp. of Req. for Review [hereinafter Pl.'s Reply], ECF No. 22.

## II.    THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S KEY FINDINGS AND CONCLUSIONS

Eligibility for disability insurance benefits requires that the claimant be "disabled" within the meaning of the Social Security Act.  42 U.S.C. § 423(a)(1)(E).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  "A claimant has the burden of proving she suffers from a disability."  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

To determine disability, the Commissioner uses a sequential, five-step approach, which considers:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (cleaned up); *see also* 20 C.F.R. §

---

Cir. 2005) ("[W]hen the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.").

404.1520(a)(4).  "The burden of proof is on the claimant at the first four steps," *Kneeland*, 850 F.3d at 753, and if she gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).  A determination at any step that the claimant is disabled or is not disabled "ends the inquiry."  *Id*.

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Kneeland*, 850 F.3d at 754.  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* (cleaned up); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).  "The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work."  *Kneeland*, 850 F.3d at 754.

Here, ALJ Fraiser evaluated Gonzalez's claim pursuant to the above-mentioned five-step sequential evaluation process.  As a threshold matter, the ALJ found that Gonzalez's last date insured is December 31, 2024.[20]  At step one, the ALJ found that Gonzalez had not engaged in substantial gainful activity since December 30, 2021, her alleged disability onset date.[21]

At step two, the ALJ found that Gonzalez had the following "severe" impairments: myeloma and diabetes mellitus.[22]  The ALJ however found that her hypertension and obesity were not severe.[23]

At step three, the ALJ found that Gonzalez's impairments, alone or in combination, were

---

[20] Tr. at 26.

[21] *Id.*

[22] *Id*.

[23] *Id.* at 27.

not severe enough to meet or equal, in severity, any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and therefore did not qualify for presumptive disability.[24]  Specifically, he found that the severity of Gonzalez's myeloma did not meet or equal the severity of Listing 13.07 (multiple myeloma).[25]  In making that finding, the ALJ reasoned that (a) Listing 13.07A was not met because the medical evidence of record did not document failure to respond or progressive disease following initial anticancer therapy and (b) Listing 13.07B was not met because the medical evidence of record did not document bone marrow or stem cell transplant during or within twelve months of the start of the relevant period.[26]  Further, the ALJ explained, Gonzalez did not present evidence that the severity of her impairment equals Listing 13.07.[27]

Next, before going to step four, the ALJ determined that Gonzalez had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).[28]  Specifically, the ALJ found that while Gonzalez's ability to work was limited, the medical evidence of record did not support that she was limited to the extent she alleged.[29]  Considering her myeloma and diabetes mellitus, the ALJ explained, he limited Gonzalez to the full range of sedentary work.[30]

At step four, based upon the VE's testimony, the ALJ found that given Gonzalez's RFC, she could perform her past relevant work as a statistician for utilities (Dictionary of Occupational

---

[24] Tr. at 27.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 29.

[30] *Id.*

Titles Code No. 020.167-026), as it is generally and was actually performed.[31]  The ALJ concluded that Gonzalez was not disabled from December 30, 2021, her alleged disability onset date, through November 1, 2023, the date of the ALJ's decision.[32]

### III.   STANDARD FOR JUDICIAL REVIEW

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia*, 880 F.3d at 704.  Courts review such a decision "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotes omitted).  It consists of "more than a mere scintilla," *id.*, but "less than a preponderance of the evidence," *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

In applying the substantial evidence standard, a reviewing court "scrutinizes the record to determine whether such evidence is present," *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015), but it may not "reweigh the evidence in the record" or "try the issues *de novo*," *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).  "[N]or, in the event of evidentiary conflict or

---

[31] Tr. at 30.

[32] *Id.*

uncertainty," may the court "substitute [its] judgment for the Commissioner's, even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704 (internal quotes omitted). "Conflicts of evidence are for the Commissioner, not the court[], to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## IV.    DISCUSSION

Gonzalez chiefly assigns three errors to the ALJ's decision: (1) the ALJ improperly evaluated her testimony about her subjective symptoms;[33] (2) the ALJ failed to support the RFC with substantial evidence; and (3) with no medical opinion in the record, the ALJ crafted the RFC based on his lay interpretation of the medical evidence. Pl.'s Br. at 5, 9–10, 12–13; Pl.'s Reply at 5–6. Below, the Court addresses the first two assignments of error together because Gonzalez's arguments about them largely overlap, and then the Court addresses the third assignment of error.

### A.  The ALJ's Evaluation of Subjective Symptom Testimony and RFC Determination

In assessing a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence" including the claimant's own "descriptions and observations of [her] limitations from [her] impairment(s)" and "limitations that result from [her] symptoms, such as pain." 20 C.F.R. § 404.1545(a)(3). In evaluating the claimant's symptoms, the ALJ must first determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms, and if so, he then has to evaluate the intensity and persistence of the

---

[33] Gonzalez frames this error as follows: "the ALJ's subjective symptom analysis was improperly *based on the ALJ's lay interpretation of objective medical evidence*, thus rendering it unsupported." Pl.'s Br. at 5 (emphasis added); *id.* at 10 (same). However, as we will see, in the section of her brief that is dedicated to this error, she largely focuses on the ALJ's alleged disregard of certain evidence in evaluating her testimony (and similar arguments); she mentions *en passant* any lay interpretation only once, *id.* at 10–13; *see also id.* at 12 ("… an impermissible lay determination without the benefit of any medical opinion"). In any event, the "lay interpretation" argument is subsumed in Gonzalez's third assignment of error.

symptoms to determine the extent to which the symptoms limit her ability to do basic work activities. *Id.* § 404.1529(b)–(c).

In turn, in evaluating the intensity, persistence, and limiting effects of the symptoms, the ALJ has to consider a variety of factors listed in 20 C.F.R. § 404.1529(c)(3), including the duration, frequency, and intensity of the symptoms; the effectiveness and side effects of medication; and the claimant's treatments other than medication. *Id.* § 404.1529(c)(3)(i)–(vii). In his decision, the ALJ need not discuss each of the regulatory factors. *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011); *Qualls v. Apfel*, 234 F.3d 30, 2000 WL 1568324, at *1 (5th Cir. 2000). Nor does the ALJ need to "discuss every detail in the record as it relates to every factor"; "[s]ummaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (quoting *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021)).

Ultimately, "the evaluation of a claimant's subjective symptoms 'is a task particularly within the province of the ALJ,'" *Clary v. Barnhart*, 214 F. App'x 479, 482 (5th Cir. 2007) (quoting *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)), and it is entitled to "judicial deference" if it is supported by substantial evidence, *Smith v. Barnhart*, 172 F. App'x 36, 36 (5th Cir. 2006) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)).

Here, as relevant to her arguments, Gonzalez testified at the hearing as follows. She testified that she experienced extreme numbness in her hands and feet, and pain in her wrists; and as a result, it took her much longer to fill out paperwork than before. Tr. at 40–41. She testified that she felt extremely tired, adding that sometimes she was so exhausted that she would have to take an hour-long nap during the day. *Id.* She testified that she experienced sudden bowel movements, explaining that while walking or sitting down, all of a sudden, she would

have to run to the bathroom to relieve herself. *Id.* at 40.  She also testified that she experienced

loss of balance (though not because of any dizziness), explaining that while standing, all of a

sudden, she would fall. *Id.* at 42.  All these issues, she said, prevented her from doing anything,

including her past job. *Id.* at 41.  In response to the ALJ's questions at the hearing, her

administrative-level counsel explained that Gonzalez's greatest symptoms were fatigue and

neuropathy.[34] *Id.* at 46–47.

In his written decision, under the RFC assessment section, the ALJ began by

summarizing Gonzalez's allegations and testimony.  Tr. at 28.  He noted that in her disability

reports, Gonzalez alleged disability based on a series of conditions, including multiple myeloma

with significant fatigue. *Id.*  He noted that at the hearing, Gonzalez reiterated her complaints

regarding these conditions and testified that she experienced significant fatigue, balance issues,

and dizziness. *Id.*  The ALJ then wrote that for the reasons explained in the decision, he found

that Gonzalez's medically determinable impairments could reasonably be expected to cause the

alleged symptoms but that her statements concerning the intensity, persistence, and limiting

effects of these symptoms were not entirely consistent with the medical and other evidence. *Id.*

Following that, the ALJ summarized Gonzalez's myeloma treatment records.  He noted

that she underwent chemotherapy and stem cell transplant prior to the start of the relevant period

and that she was noted to have achieved complete response and was prescribed maintenance

medications.  Tr. at 28.  Citing lab reports from the relevant period, he added that her bone

marrow biopsy, aspiration, and MRI showed no resurgence of cancer, no active myelomatous

lesion, and no evidence of disease progression. *Id.*  Citing two treatment notes from late 2022,

---

[34] *See Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 729 n.1 (11th Cir. 2017) ("Peripheral neuropathy is the result of damage to peripheral nerves.  Symptoms of peripheral neuropathy include numbness, tingling, and pain, usually in the hands or feet." (citations omitted)).

the ALJ noted that she reported some pain when cold as well as neuropathy in her hands and feet; however, the ALJ remarked, her examinations have generally been normal. *Id*. Citing a doctor's notation in a treatment note, the ALJ noted that Gonzalez had been assessed as being in full remission and that her myeloma had resolved. *Id*. After discussing additional evidence, the ALJ concluded that Gonzalez's subjective complaints were not entirely consistent with the evidence in the record and that while her ability to work was limited, the medical evidence did not support that she was limited to the extent she alleged. *Id.* at 29. He explained that he limited her to the full range of sedentary exertional work, considering her myeloma and diabetes. *Id.*

Gonzalez argues that the ALJ reversibly erred because his evaluation of her symptoms is flawed and he provided insufficient analysis. Pl.'s Br. at 16; Pl.'s Reply at 4. She asserts that the ALJ's stated reasons for rejecting her testimony were that her myeloma went into full remission and her examinations had been generally normal. Pl.'s Br. at 12; Pl.'s Reply at 8. She argues that although her stem cell treatment was effective, she continues to experience the "residual effects" of her myeloma and its treatments, including the side effects of her medications for myeloma. Pl.'s Br. at 3, 12. String citing pages from treatment notes, she points out that she reported fatigue; neuropathy (pain and numbness in her hands, arms, and feet); and falling and loss of balance—which, she says, are the residual effects. *Id.* at 9, 12. She contends that these documented reports support her testimony, *id.* at 12–13, but that the ALJ missed or ignored them, did not address them, and perhaps, did not consider them in evaluating her subjective symptoms, *id.* at 12–13; Pl.'s Reply at 4.

As to the ALJ's RFC finding that Gonzalez could perform the full range of sedentary work, she argues that her testimony and the documented reports support that she could not appropriately perform the sitting and standing demands of sedentary work on a sustained basis

and would be off task or absent from work in excess of customary tolerances.[35]  Pl.'s Br. at 15.

She posits that had the ALJ properly considered and addressed the evidence and had he included

in the RFC finding the difficulties and limitations she described in her testimony, he would have

reached a finding of disability.  *Id.* at 11, 15.

The crux of Gonzalez's arguments is that the ALJ did not consider certain pieces of

evidence about her subjective reports to her doctors and that had he considered them, he would

have found her disabled.  As Gonzalez acknowledges, an "ALJ does not need to comment on

every piece of evidence."  *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010), *cited in* Pl.'s

Br. at 12.  And an ALJ's failure to "specifically cite each and every piece of medical evidence

considered does not establish an actual failure to consider the evidence."  *Castillo v. Barnhart*,

151 F. App'x 334, 335 (5th Cir. 2005).  The ALJ's decision expressly states that it was made

"[a]fter careful consideration of all the evidence," Tr. at 28, and in fact, the ALJ expressly

discussed two instances of her reports about neuropathy—the very reports that she claims the

ALJ ignored.[36]  The Court "see[s] no reason or evidence to dispute [the ALJ's] assertion" that he

considered all the evidence.  *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact

that the ALJ cited certain evidence that he felt supported his decision does not mean that he

failed to consider all of the other evidence in the record.").

_____

[35] Gonzalez points to the VE's testimony, given in response to a question posed by her counsel at
the administrative level, that if a hypothetical individual with her RFC would be off task for twenty
percent of a workday, all work would be impossible for that individual.  Tr. at 49; *see also* Pl.'s Br. 11
(citing the VE's testimony).

[36] *Compare* Pl.'s Br. at 12 (citing Tr. at 2269 (treatment notes dated Sept. 20, 2022, from Dr. Lee)
and Tr. at 2838 (treatment notes dated Nov. 14, 2022, from Dr. Aloba)), *with* Tr. 28 (ALJ writing "[t]he
claimant has reported some pain when cold as well as neuropathy in [her] hands and feet" (citing Ex.
8F/58, that is, Tr. at 2016 (treatment notes dated Nov. 14, 2022, from Dr. Aloba) and Ex. 9F/64, that is,
Tr. 2185 (treatment notes dated Sept. 20, 2022, from Dr. Lee)).  The ALJ's citations differ from
Gonzalez's citations because in some instances, the record contains duplicate copies of the same
treatment notes.

To Gonzalez's argument that the ALJ should have found her disabled, the Court echoes the Fifth Circuit: "we have no power to determine if the record contains substantial evidence to support [a claimant's] claim; instead, we are confined to questioning only whether substantial evidence supports the [ALJ's] judgment." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (explaining that the claimant-appellant "misframed" the issue when she argued that had the ALJ recognized that her impairments caused pain, he would have found that her pain was disabling).

Turning to the specific subjective reports that Gonzalez cites, the Court observers that many of them are in treatment notes that are not from the relevant period[37]—they pre-date her alleged disability onset date of December 30, 2021. *See Cauthen v. Saul*, 827 F. App'x 444, 446 (5th Cir. 2020) (Generally, "disability evidence completely unrelated to the relevant period is irrelevant to adjudication of [a] claim."). Below, the Court focuses on the cited reports from the relevant period.

The medical records from the relevant period consist primarily of treatment notes from Gonzalez's nine follow-up visits with Dr. Aloba of Texas Oncology and three visits with Dr. Lee and Dr. Srour of MD Anderson—all between February 23, 2022, and June 19, 2023.[38] These treatment notes do show that she reported neuropathy or neuropathy-like symptoms during four follow-up visits,[39] and as mentioned, the ALJ expressly considered two of them; however, as the

---

[37] *See* Pl.'s Br. 12 (citing Tr. at 1230 (June 9, 2020), 1847 (June 23, 2021), 2752 (Apr. 23, 2021), 2756 (Dec. 6, 2019), 2899 (June 30, 2021)); *see also Hamilton-Provost v. Colvin*, 605 F. App'x 233, 237 n.5 (5th Cir. 2015) ("For [a] Title II disability insurance claim, the relevant time period is . . . []the alleged disability onset date[] through . . . []the last date on which [the claimant] met the Act's insured requirement[.]").

[38] *See* Tr. at 1398, 2814.

[39] *See id*. at 1937 (Mar. 29, 2022) (Review of systems was positive for numbness and intermittent tingling in hands and feet.); *id.* at 2185 (Sept. 20, 2022) (She reported neuropathy, primarily, in her hands.); *id.* at 2838 (Nov. 14, 2022) (She reported that "she has some bone pain when she is cold as well as neuropathy."); *id.* at 2830 (Jan. 23, 2023) (She reported "foot/hand numbness" and "an episode of thumb stiffness.").

Commissioner points out, she also denied that the numbness impacted her activities of daily living[40] and "denie[d] functional difficulties" from her neuropathy.[41]  During the same period, she reported fatigue only twice: on July 13, 2022, she reported "feeling extremely fatigued,"[42] and on September 8, 2022, her review of systems was positive for fatigue;[43] however, during other visits, she denied any fatigue on review of systems[44] and reported that she was doing well overall;[45] her energy level was good;[46] and she was fully active.[47]  She reported experiencing loss of balance only once during the relevant period.[48]  As to her testimony that she experienced sudden bowel urges, the treatment notes from the relevant period do not show that she ever

---

[40] Tr. at 2278 (Mar. 29, 2022).

[41] *Id.* at 2187 (Sept. 20, 2022).

[42] *Id.* at 2858.

[43] *Id.* at 2847.

[44] *E.g.*, *id.* at 2839 (Nov. 14, 2022); *id.* at 2823 (Mar. 27, 2023); *id.* at 2815 (June 19, 2023).

[45] *Id.* at 1931 (Mar. 28, 2022); *id.* at 2201 (Sept. 21, 2022).

[46] *Id.* at 2873 (Feb. 23, 2022); *id.* at 2866 (May 4, 2022).

[47] *Id.* at 2243 (Mar. 6, 2023).

[48] *Id.* at 2823 (Mar. 27, 2023).  On that visit, Gonzalez reported to Dr. Aloba that "[s]he was planning to be evaluated by neurologist secondary to dizziness and occasional loss of balance," *id.* at 2822, and Dr. Aloba referred her to a neurologist (Dr. Adzotor), *id.* at 2825, but the record does not reflect that she saw Dr. Adzotor.

The Court also notes that Gonzalez cites a June 6, 2022 treatment note to show that on that day, she reported an episode of falling, Pl.'s Br. at 9 (citing Tr. at 2214), but the note shows that she suffered the fall because "she tripped over her dog's leash," Tr. at 2214, and subsequently, another doctor characterized it as "a mechanical fall," *id.* at 2187; all this suggests that the fall was not causally related to her myeloma or its treatment.  As such, the fall is irrelevant to her arguments.

- 14 -

reported them to her doctors.[49]  Finally, the treatment notes repeatedly show that she was

tolerating her maintenance medication well.[50]

The above-discussed evidence from the relevant period suggests that often, she

experienced some of the symptoms that she testified to at the hearing, in particular, fatigue and

neuropathy-like symptoms—a point that the ALJ acknowledged in his decision.  Tr. at 28 (the

ALJ writing that her "medically determinable impairments could reasonably be expected to

cause the alleged symptoms").  But it does not undermine the ALJ's determinations that her

statements concerning the intensity, persistence, and limiting effects of these symptoms were not

entirely consistent with the evidence, id., and that she was not as limited to the extent she

---

[49] Cf. also Spindel v. Comm'r Soc. Sec. Admin., 333 F. App'x 174, 176 (9th Cir. 2009) ("An unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on a claimant's sincerity." (cleaned up)); Drea v. Barnhart, 58 F. App'x 225, 229 (7th Cir. 2003) (finding claimant's "complaints of fatigue are undermined by his failure to seek medical attention for extended periods of time").

In fact, with the exception of her March 7, 2023 follow-up visit, when she reported that "Yesterday[, she] had severe abdominal pain and cramping," Tr. at 2236, she repeatedly denied any gastrointestinal issues on review of systems during other visits, e.g., id. at 1931, 2201–02, 2815, 2823, 2830, 2839, 2847, 2859, 2866, 2874; see also id. at 2214 (June 6, 2022 treatment notes from Las Palmas Medical Center) (Review of systems was negative for vomiting.); id. at 2728 (July 25, 2022 treatment notes from Dr. Benito Marranzini) ("Patient denies abdominal pain, constipation, diarrhea, difficulty swallowing, nausea, [and] vomiting.").

[50] See, e.g., Tr. at 1935 (doctor's notation that Gonzalez is "[c]urrently on maintenance with Revlimid 10 mg daily[ and] tolerating well" (treatment note dated Mar. 28, 2022)); id. at 2187 (notation that she "is tolerating Revlimid maintenance overall well" (treatment note dated Sept. 20, 2022); id. at 2248 (notation that she "is currently receiving maintenance therapy with single agent Lenalidomide 10 mg PO daily[ and] tolerating well." (treatment note dated Mar. 6, 2023); id. at 2822 (notation that she "continues on Revlimid and is tolerating well" (treatment note dated Mar. 17, 2023)).

As previously mentioned, since January 2021, Gonzalez has been on a maintenance regimen with Revlimid.  In December 2020, after she underwent the stem cell transplant, Dr. Srour discussed with her the potential benefits of the maintenance therapy with Revlimid and warned her that the potential side effects of Revlimid included fatigue and diarrhea.  Id. at 1730.  And much earlier, in March 2020, while discussing Gonzalez's treatment options for induction therapy, Dr. Lee explained to her that the option with Revlimid, Carfilzomib, and Dexamethasone had the advantage of "decreased incidence of peripheral neuropathy," id. at 930, and ultimately, she was on that regimen from April to August 2020—more than a year prior to her alleged disability onset date, id. at 1085–86.

- 15 -

alleged, *id.* at 29.  These determinations are entitled to "considerable deference."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *see also Wilder v. Kijakazi,* 22 F.4th 644, 653 (7th Cir. 2022) (A court will uphold an ALJ's evaluation of the claimant's subjective symptoms unless it is "patently wrong.").

In view of the ALJ's discussion of the relevant evidence and explanations, which the Court has summarized above, the Court finds that substantial evidence exists in the record to support the ALJ's evaluation of Gonzalez's testimony about her symptoms and his RFC determination.  *See Cain v. Barnhart*, 193 F. App'x 357, 362 (5th Cir. 2006) (finding ALJ's decision to discount claimant's testimony was based on substantial evidence, where the record contained "some complaints" of side effects from the claimant's medications, but "no significant complaints" during the relevant period); *see also Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."); *accord Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

The Court overrules Gonzalez's first and second assignments of error.

## B.  Crafting the RFC Without Any Medical Opinion

For this set of arguments, Gonzalez relies on *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), and *Williams v. Astrue*, 355 F. App'x 828 (5th Cir. 2009).  Specifically, she points out that the record does not include any medical opinion from medical sources such as her own doctors and that the ALJ rejected the state agency medical consultants' opinions.  Pl.'s Br. at 9. Consequently, she argues, the ALJ was left with no medical opinion that interpreted the medical data and detailed her limitations.  *Id.*; Pl.'s Reply at 5.  Therefore, she posits, the ALJ crafted the

RFC based solely on his "lay interpretation" of the medical evidence.  Pl.'s Br. at 6; *see also*

Pl.'s Reply at 6 (arguing that by interpreting the evidence on his own, the ALJ substituted lay

judgment for medical evidence).  In turn, she claims that substantial evidence does not support

the ALJ's RFC.  This, she argues, warrants reversal under *Ripley* and *Williams*.  Pl.'s Br. at 6–7.

In *Ripley*, there was a total absence of any medical source statement (*i.e.*, medical

opinion[51]) regarding the effects of the claimant's condition on his ability to work, and the only

evidence regarding such effects came from the claimant's own testimony, but the ALJ did not

consider it.  *Ripley*, 67 F.3d at 557, 558 n.28.  Under these circumstances, the court concluded

that "without reports from qualified medical experts," it was "unable to determine the effects of

[the claimant's] conditions, no matter how 'small,' on his ability to perform sedentary work,"

and in turn, the court concluded that substantial evidence did not support the ALJ's

determination that the claimant was capable of performing sedentary work.  *Id.*  The court

remanded with instructions for the ALJ to obtain a report from the claimant's treating physician

regarding the impact of his condition on his ability to work and to evaluate his subjective

complaints of pain.  *Id.* at 758.

In *Williams*, the ALJ rejected all three treating physicians' opinions that the claimant

could perform only "sedentary work," and instead, based only on medical evidence describing

the claimant's conditions, the ALJ found that the claimant was capable of performing "light

work."  *Williams*, 355 F. App'x at 831–32.  Under these circumstances, the court concluded that

---

[51] *See* SSR 96-5p, 61 Fed. Reg. 34471, 1996 WL 362206 (SSA July 2, 1996) ("Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s)."), *rescinded by* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5845, 2017 WL 168819 (SSA Jan. 18, 2017).

the ALJ impermissibly relied on his own medical opinions and the ALJ's RFC finding was not supported by substantial evidence. *Id.* at 832 & n.6 (citing *Ripley*).

In three respects, the circumstances presented in this case differ from those in *Ripley* and *Williams*. First, here, the record included medical opinions—more precisely, the prior administrative medical findings—of two state agency medical consultants, Kim Rowlands M.D. and Jeanine Kwun M.D.,[52] and although the ALJ rejected them, he did so in Gonzalez's favor. Specifically, both Dr. Rowlands and Dr. Kwun found that Gonzalez's myeloma was a medically determinable impairment but that it was not severe. Tr. at 54, 59. The consultants did not assess an RFC, adding a notation, "No RFCs are associated with this claim," *id.* at 54, 60—which "suggests an opinion that [Gonzalez] suffers from no functional limitations," *Bean v. Soc. Sec. Admin.*, No. 3:17-1572, 2018 WL 7137981, at *4 (M.D. Tenn. Dec. 27, 2018), *R & R adopted*, 2019 WL 341809 (M.D. Tenn. Jan. 28, 2019). ALJ Fraiser found that the consultants' opinions were not persuasive, reasoning that the medical evidence of record demonstrated that her myeloma and diabetes resulted in more than minimal limitation in her ability to perform work-related activity. Tr. at 29. The ALJ concluded that Gonzalez's myeloma and diabetes were severe, *id.* at 26, and explained that considering her myeloma and diabetes, he limited her RFC to the full range of sedentary work, *id.* at 29. Thus, and as the Commissioner points out, the ALJ's RFC determination was favorable to Gonzalez in contrast to the consultants' opinions that she had no limitations. *See* Def.'s Resp. at 7–8 (arguing that the ALJ found that Gonzalez's RFC limited her to the full range of sedentary work, a much greater exertional limitation than the prior administrative findings of no limitations).

---

[52] *See* 20 C.F.R. § 404.1513a(b)(1) ("State agency medical . . . consultants are highly qualified and experts in Social Security disability evaluation."); SSR 17-2p, 2017 WL 3928306, at *3 (SSA Mar. 27, 2017) (State agency medical consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act.").

This case therefore differs from *Ripley*, where there was a total absence of any medical opinion in the record. It further differs from *Williams*, where the ALJ determined an RFC (medium work) that was less restrictive (therefore, unfavorable to the claimant) than the limitations (sedentary work) that the physicians assessed and the ALJ rejected. *See Johnson v. Bisignano*, No. 1:25-CV-231-ML, 2025 WL 2900012, at *6 (W.D. Tex. Oct. 9, 2025) (rejecting claimant-plaintiff's *Ripley*-based argument that the case must be remanded because there was no medical opinion that supported the RFC and reasoning that "the State agency consultants' opinions supported no limitations" and that "[i]f the ALJ erred, the ALJ erred in her favor by being too generous"); *see also Sheridan v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-300-MAC-KFG, 2019 WL 6003297, at *8 (E.D. Tex. Aug. 30, 2019) (distinguishing *Ripley* on the grounds that the ALJ determined the claimant's RFC to be light work, which was "less onerous" than state agency consultant's opinion that he had the RFC to perform medium work).[53]

Second, unlike the *Ripley* ALJ who did not consider the claimant's testimony about his limitations, ALJ Fraiser considered and addressed Gonzalez's testimony about her limitations. Tr. at 28–29 (summarizing Gonzalez's testimony and evaluating the same). In fact, at the hearing, the ALJ specifically asked her counsel to direct him to any medical records that might indicate the kind of limitations that she testified she was having with her hands and feet, *id.* at 47, and in his written decision, the ALJ addressed her reports of neuropathy in her hands and feet, citing one of the treatment notes that counsel identified at the hearing, *id.* at 28, 47.

Finally, as discussed above, *see ante* Part IV.A, based on the ALJ's discussion and the Court's review of the record evidence, the Court was able to determine that substantial evidence

---

[53] *Cf. also Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("Remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit.").

supports ALJ Fraiser's RFC determination.  *See Vasquez v. O'Malley*, No. 24-50233, 2024 WL 4381269, at *1–*2 (5th Cir. Oct. 3, 2024) (holding the ALJ did not commit a *Ripley* error even though the ALJ assessed the RFC without a consultative exam or medical testimony describing how her impairments impacted her ability to work (citing *Ripley*, 67 F.3d at 557)); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (finding that the ALJ's RFC determination was "based on substantial evidence even without . . . a medical opinion" (citing *Ripley*, 67 F.3d at 557)); *cf. Ripley*, 67 F.3d at 557 (Where the record contains no medical source statement, "our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.").

The Court therefore finds that neither *Ripley* nor *Williams* requires reversal of ALJ Fraiser's decision.  "What [Gonzalez] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *see also Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) ("It is the responsibility of the ALJ to interpret 'the medical evidence to determine a claimant's capacity for work.'" (brackets omitted) (quoting *Taylor*, 706 F.3d at 603)); *Rounds v. Comm'r, Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Gonzalez also contends that the ALJ erred by failing to order a consultative examination or contact her doctors for a medical opinion.  Pl.'s Br. at 9–10.  An ALJ's decision to order a consultative examination is discretionary, and a consultative examination "is required 'only if the record establishes that such an examination is *necessary* to enable the ALJ to make the disability decision.'" *Brown v. Saul*, 858 F. App'x 711, 713 (5th Cir. 2021) (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)).  The record that the ALJ reviewed was replete with medical

documents dating back to late 2019 from Texas Oncology, MD Anderson, and other medical facilities—spanning over 2,000 pages; they included extensive treatment notes prepared by Dr. Lee, Dr. Srour, and Dr. Aloba regarding Gonzalez's myeloma, treatment, progress, and symptoms.  The ALJ also heard testimony from Gonzalez regarding her symptoms and limitations and testimony from the VE regarding whether someone with Gonzalez's RFC could perform her past job.  Nothing in the record suggests that the ALJ needed any more medical information to reach an informed decision about whether Gonzalez was disabled.

As for her argument that the ALJ should have contacted her own doctors, Gonzalez, "not the ALJ, bears the burden of proof at this step of the inquiry."  *Allen v. Kijakazi*, No. 21-30771, 2022 WL 7265517, at *2 (5th Cir. Oct. 12, 2022); *see also Vasquez*, 2024 WL 4381269, at *2 ("The ALJ's duty [to develop the record] must be balanced against a claimant's burden of proving disability through Step Four of the disability determination, including the RFC stage."). Gonzalez—who was represented by counsel before the ALJ—could have submitted medical opinions about her ability to work from any of the physicians who treated her myeloma since its diagnosis in late 2019, but she did not.  *Cf.* 20 C.F.R. § 404.1545(a)(3) ("We will consider any statements about what you can still do that have been provided by medical sources.").

The Court overrules Gonzalez's third assignment of error.

## V.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

So ORDERED and SIGNED this  25th  day of November 2025.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**